We're ready to hear argument in the first case, United States v. Torres-Reyes. May it please the court, Jenny Lyston on behalf of the appellant Apolonio Torres-Reyes. Your honors, we are asking you to vacate the sentence today as procedurally unreasonable based on two distinct errors, either one of which warrant reversal here. The first occurred when the district court failed to give any sentencing rationale to support the 37-month sentence it imposed. And the second occurred when the district court failed to explain why it had rejected Mr. Torres-Reyes' arguments in favor of a lower sentence. So turning to the first error, the Supreme Court in Gall has explained that regardless of whether a sentencing court is imposing a sentence above the guidelines, below the guidelines, or within the guidelines, it is required to place on the record a sentencing rationale to adequately explain that sentence to permit meaningful appellate review and to promote the perception of fair sentencing. And in this case, your honors, I believe what we have is a district court who was unaware of that sentencing obligation. And I say that because when you look on page 37 of the joint appendix, this is at the very beginning of the sentencing proceeding, the court is sort of laying out for the parties how it intends to proceed in the case. And it says it's going to be following the dictates of United States versus Hughes. That is a 2005 decision from this court. And then it says it's going to be calculating the guidelines. It's going to be considering the 3553A factors. And then the court says something very interesting. It says, quote, if the court were to impose a sentence outside the guideline range, it is required to explain its reasons for doing so. And that statement strongly suggests, your honors, that the district court mistakenly believed that as long as it was posing a sentence. It doesn't actually, I mean, that's saying one thing doesn't imply the negative. Absolutely, your honor. But it does suggest that he thought that as long as he was giving a within-guideline sentence, he wouldn't have to explain his reasons. And that may have, may well also rest with the fact that he says he's following the dictates of United States versus Hughes. What about the fact that the district court noted that it had considered the motion for a downward variance? It said it had considered it, your honor. And I would point out that, so Mr. Torres-Reyes made four arguments. Two he put in the sentencing memo. And he presented an additional two at the sentencing hearing itself. So the first two rested with that, sort of the vagaries of how an illegal reentry case works. You had that continuing offense theory. And he was saying first, he was making a legal objection to the calculation of the guideline range, which we have not brought forward on appeal. And then the sentencing memo also said, well, because of this, you have that, because of this continuing offense theory, you have them bringing in this very, very old conviction that would otherwise not score under the guidelines. So he was asking for a downward departure for over-representation of the criminal history category. And he was asking for a downward variance based on disparities between similarly situated defendants. That's why it was a motion for a variance or a departure. Then at sentencing. So taking the last one, the disparities, which I assume is one of the two, I'm not sure which of the four we're talking about here, but the disparities argument. Every time I've seen that argument actually made, they point to some actual disparity, right? And so the challenge I've got, and we could talk about each of them and maybe we should, but with the disparity argument, he says at some point unwanted disparities may, key phrase, may arise in illegal reentry cases, right? But gives no information about that, right? That's sort of, I'm curious about is your perspective on how that conclusory statement, right, with no information about anything else to back it up, that conclusory statement, how that raises in a meaningful way a grounds for a variance. So I think what he was trying to point out, that you're going to have two exactly similarly situated defendants in an illegal reentry case. And in one case, you're going to be able to pinpoint that reentry date, right? Because that's when the PSR could actually say, no, this is actually when he reentered the country. And then you're going to have, and in other cases, you're not going to have that same date. And so you're going, and so then the old, that old criminal conviction would not come in, because it would normally age out, right, under the guidelines. And so I think that's the point that Mr. Martin was trying to make, that this, the way that whole theory is going to work may result in substantial disparities between similarly situated defendants. So from your perspective, the disparities argument that he's making only relates to this criminal history objection that was made. It relates to it. Relates, yeah, no, no, no, no. It relates to, but the disparity argument he's making is limited to that one issue. I believe so, Your Honor. And so then the sentencing court says, I've read your motion, right? But then, of course, that is before Mr. Martin then goes on, Defense Counsel goes on to make two additional arguments, which was that, of course, Mr. Torres-Reyes' time that he was already serving in state prison provided specific and general deterrence. And he also noted that a shorter sentence would result in savings to taxpayers. Now, I will give you that that is not a very individualized argument. I will say that it does have particular resonance in the illegal reentry cases, I think, where you have a defendant at the end of the day simply being deported. And you- When it comes to the state sentence, Counsel, we know that the district court heard that argument and had some back and forth with Counsel about it, isn't that right? There was a discussion about when the sentence would conclude in the state's system, etc. Is that right? And doesn't that indicate that the court did consider that argument? What else do we need? So what we need here, as this court said in blue, is it's important for the sentencing court to explain then why the arguments have been rejected, right? What we have here is the failure to explain why. It's that all-important why that lets us know what sentencing court was thinking in placing that sentencing rationale on the record so that this court can do its job. And that, of course, you also have that very important perception of fair sentencing in the court. Do we have a reason to think that it's not a harmless error? If the court clearly understood there were state sentences and tried to coordinate with those sentences, would we think that the district court had already thought that through? So the harmless error, first of all, we would contend, Your Honor, that it would be particularly inappropriate in this case to view it with a harmless error scheme because especially where you have affirmative statements on the record indicating that the sentencing court may have not understood its sentencing obligation. Because, of course, if this court chooses not to correct the error. Well, they're not affirmative statements on the record. What you're saying is there are statements on the record from which you imply that the judge didn't know what he was doing. I think it's a little bit more than implying, Your Honor. I think if he had meant to say, oh, and I understand I always have to explain my sentence. Well, the case law does indicate pretty strongly that we're not to have to imply or guess or speculate about what the court meant when it sentenced the defendant. That's why the court needs to explain. Is that right? That's correct, Your Honor. And also, going back to that Hughes decision, Hughes is a 2005 case from this court. It doesn't say anything about the sentencing court's obligation to put its sentencing rationale on the record. What you have instead is that comes later in Gall. You have, I think it's notable that there's been so much development in the sentencing law since 2005. You've got from the Supreme Court, you have Rita, you have Kimbrough, you have Gall. From this court, you have Lynn, Carter, Slappy, Blue, Ross, over and over again. So I think it serves as some indication that the district court may not have understood its obligation there. In fact, if you look at the parties' briefs, you will see that neither one of us in the table of cases has cited a single case that predates Gall. So I think that is a little bit more indication that the district court. And nobody has cited a single case where the continuing offense theory was used in this way. Correct? There is no case where this has been done before, correct? That's correct. Or maybe the government can come up with something when they get up here. I would just also like to, you know, speaking about the harmless error, you know, it is a high burden for the government to show. And I think that's why it's not used in a lot of cases. The government has cited only a single case, United States versus Bulware. And I'm going to get to Bulware in a minute. But I would just note on page 8 of my reply brief, I have cited to this court in addition to Blue and Ross, a very long string site of cases in which the government has made this exact same argument, the harmless error argument. And this court has rejected that argument and said, no, I think there's not enough on the record here. We need to send it back and have a re-sentencing. Because we're just not, we cannot be fairly assured and confident  And in every single one of those cases, Your Honors, if you go and look at what the defendant got at re-sentencing, the defendant received a lower sentence on remand at re-sentencing. And in some cases, that was a lower sentence by months. And in some cases, it was a lower sentence by years. Which I think is fairly. Were those departures or variances or were they within the guidelines? So, Your Honor, I simply went back and looked to see what the defendants got on remand. So I'm not exactly sure. There wasn't necessarily a sentencing transcript for me to check on that. But I do think it's pretty strong evidence to show that when you force the sentencing court to actually place its sentencing rationale on the record, and when you force the district court to actually respond and explain why the court has rejected the non-frivolous arguments, it actually can make quite a difference. And actually, Judge Richardson, I think your case last month in United States versus McCall also serves as just an important reminder of how important it is that the sentencing court places a sentencing rationale on the record. And that was the meth case from West Virginia. And you vacated that sentence as unreasonable not because the district court failed to put a sentencing rationale on the record, but because when you looked at that case, you looked at the reasons that the court gave, and you saw that, hmm, it looks like the district court actually maybe got some of the facts in this case mixed up. And you also saw that the court may have relied on some improper sentencing factors. And notably, you actually sent that decision back to a different district court judge, not because you actually thought that the court did rely on improper sentencing factors, but it was merely to avoid the appearance of bias. And again, it's sort of that promoting the perception of fair sentencing is so important. Because the public, when we're talking about the public in fair sentencing, we're mainly talking about the defendant and the defendant's family, who's all sitting right behind him in the courtroom. And, you know, the sentencing is the culmination of a federal case. We know that the over... I see your time is running short, and you mentioned you were going to get to Balwell. Yes, yes. Thank you so much. Can you talk about that, please? So, Balwell does not support the government's argument. In fact, Balwell supports Mr. Torres-Reyes because when you look at... because this court in Balwell actually contrasted the facts of that case with the kind of scenario that we have here. And Balwell, the district court actually went through a number of the sentencing factors, the 3553A factors. And it talked about the history and characteristics of the offender. It talked about the nature and circumstances of the offense. And it specifically emphasized the specific and general deterrence. And the court in Balwell contrasted that to a case where it said the district court doesn't cite any of the 3553A factors, which when you look at what the sentencing court did here, the sentencing court did not cite a single 3553A factor. It's not a rote reference, right? And he does talk about, I'm familiar with your client's background, and he talks about the background. That's the history and characteristics of the defendant. He doesn't need to say that's 3553A1. Absolutely, and we are not requiring the district court to robotically tick through all the 3553A factors. He just needs to tell us which 3553A factor and which characteristics he felt that were important to the sentencing case to ensure that there is a reasoned basis for that judgment. The other thing that the court did in Balwell was to contrast the situation in Balwell where the defendant made only a single, what this court called very weak, unsupported argument that basically amounted to her saying that, well, people will miss me when I'm gone. They're going to kind of be without me. And this court said, given the weakness of that single argument, in contrast to the situation in Lynn, where in Lynn, the district court, the defendant made a number of non-frivolous arguments that the court failed to address. And the court in Balwell said, that's a different scenario. And here in Balwell, where you'd have no 3553A factors and you'd have only a single weak argument, we can feel confident that this district court would have imposed the same sentence regardless. But that's not what we have here because we have the district court without a single, failing to cite to a single 3553A factor, and you have absolutely failed to explain why it was rejecting the non-frivolous arguments. I don't want to take the end of your time, but looking at the arguments, I get the idea that depending on how substantial the arguments for variance are, that affects the degree of discussion. So tell me, if I'm looking at the four I think you've suggested, not sure exactly how those line up, but of those four, which one do you think is the strongest argument for a variance? Is that the criminal history continuing offense piece? Along with the substantial disparities, Your Honor, I think, yes. But the substantial, I mean, that's what we talked about. Substantial disparities is sort of a sub-part of the criminal history continuing offense piece, right? Yes, and along, yes, I would agree with that, with the over-representation in the criminal history category, yes. And the reason that, and I think you're absolutely right about that. Reason being this, the other, and that one is developed. The other arguments that we've sort of talked about here are maybe sort of raised, but they're not fleshed out in any meaningful way. I mean, that's the concern I've got. And I understand that one, and that's one that we talked about. But the other arguments out of the four, maybe the two that are left, are the ones that don't seem to be adequately developed by counsel. Now, maybe that was counsel's fault. I hope that you weren't counsel. Sorry. But weren't adequately developed by counsel. But that sort of affects the degree to which the district court needs to address them specifically, right? I agree 100%, Your Honor. And however, I will point out that they were not, they were not frivolous arguments. And what this court has said over and over and over again is that the district court is required to explain, to address each and every non-frivolous argument and explain why those arguments have been rejected. And the district court plainly failed to do that in this case, Your Honors. And I don't think, also what this court said in blue is that we cannot truly assume, we cannot assume that the district court truly considered the individual characteristics of the case and truly considered the non-frivolous arguments unless the record makes it patently obvious. And this court said in slappy that as long as it is plausible that the district court could have imposed a different sentence when it actually considers the arguments, then that was sufficient to avoid harmless error review. Thank you, Your Honors. You have some time on rebuttal, thank you. Thank you. All right, Ms. Fritz. Thank you. Good morning. May it please the court, Christine Fritz on behalf of the United States. When you look at this sentencing transcript, what it reflects is the court's assessment that the guidelines are appropriate because this is a typical case. And the court imposed the bottom of the guidelines. So where in the record did the district court explain why it rejected appellant's motion for a downward variance? Where is that patently obvious explanation in the record? I think that with respect to the appeal of the denial of the downward departure motion, it's apparent that the court appreciated it had the discretion to do that. Well, where? Where is it apparent? And where is the explanation of why? First, at the beginning of the sentencing hearing, the court brought up the idea of the staleness. It says, I've reviewed your motion and I see some problems with that. So I think it's foreshadowing that it's not persuaded by that motion. After the district court explained its understanding of the continuing offense theory, the defendant then, defense counsel then argued his position that, in his opinion, that applying the continuing offense theory to this particular case would be unfair and it would unduly prejudice the court. Was that with regard to the objections to the PSR or was that with regard to the motion for downward variance? I think it is a little bit of both. It was with regard to the objections to the PSR. Unless you can, I have the record here if you want to show me where the district court explained why it rejected the downward variance. The district court, I'm sorry, I thought you were talking about with the defendant's argument. I think that it's fair to say that the defendant argued this over-representation idea, both in the context of the departure and in the variance. And you are absolutely correct. And the judge only responded, the so noted is only with regard to the discussion around the objections to the pre-sentence report. Yes, you are absolutely correct. And I'm still looking for where the court explained its reasoning for rejecting the downward variance in the context of the actual downward variance decision. I think in this case, what we have is the court, after announcing the advisory guideline range, he turns to the history and characteristics of the defendant. He specifically says, I've read your motion for downward variance. He points out the defendant's age, his status of having a child, the fact that he had been deported twice. And he says, he essentially says, I'd like you to explain to me where I should go within the guideline range and why, counsel. So I think it's pretty apparent at that point, he is not persuaded by the arguments. That's one thing he has to, the court has to explain. Well, I think it is apparent, the court must not have been persuaded by the arguments because of the ruling, but the court has to explain why. I think the, can I ask it a slightly different way, is does the court, where the variance is based on the same ground as the objection, does the court have to repeat itself with respect to the variance? And maybe it does, I'm not, but that's, I think, sort of maybe a piece of that question is if the objection, and hypothesize for us that there's one objection about the criminal history and there's one ground for a variance. It's not this case, but just stay with me. And he explains with respect to the objection why this doesn't work, right? I overrule the objection for reasons A, B, and C, right? Considers the arguments there and then does not address separately, hypothesize here, that as a ground for a variance, right? The question is why that suffices? Why, if you address the merits of the objection and discuss your views on it there, why is that, or why should that give us confidence as Blue suggests, that it's been considered by the court? I mean, what Blue suggests is that the non-frivolous grounds be considered by the court. That's sort of slappy and blue in that line of cases, that it's considered. Why do we think those are the same? I think that because they are grounded in the same facts. It is the same argument. And I am reminded of what- Do you have case law support for that? That the consideration of the same argument as it relates to- Is good enough? I think that if you look at Chavez-Mason, what the court said was, at bottom, a sentencing judge need only set forth enough to satisfy the appellate court that he has considered the party's arguments and has a reasoned basis for exercising his own legal decision-making authority. And Rita said that- The judge provided enough information that it considered the party's arguments when it said, so noted. Yes. In response to the objection to the PSR. Absolutely. I think when the court, first of all, said, I've read your sentencing memoranda. I'm familiar with your downward departure motion. And after this over-representation argument is made, the court says, so noted. That is enough. And I think that in Rita, what the court talks about is- Is that enough to explain the reasons for rejecting the motion for downward variance? I don't- And where do you have case law support for that? Well, I would look to the court statements, the Supreme Court statements in Chavez-Mason, where they say, in that case, the court said a guideline sentence is appropriate. And there were three non-frivolous arguments presented. That he was vulnerable by virtue of his employment. He had distinguished military service and he was in poor physical health. The court said, after hearing actual evidence and argument, all he said was, I think that the guideline, a sentence in the guideline range is appropriate. And the Supreme Court says, he must have thought there was not much more to say. And then the Supreme Court goes on and says, we acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence and argument. The Supreme Court doesn't require that. All right, but so go back. And so I just wanna make sure I understand the sort of the context here. On 38 and 39 of the JA, right? The court gives sort of three paragraphs here about this objection, right? So they're talking about the over, the criminal history objection. And he goes through and says, this is why, like I've looked at this case law, this is De La Cruz, right? This is when he first reentered, this is that. And so I believe is within the 10 year period for counting a prior conviction. So he's given that explanation. Argument comes back and says, all right, like, you know, the defense lawyer doesn't wanna directly disagree with that, but says, in any event, this is like over-representation. This is sort of the variance piece of that argument, right? He says, we understand that, but we're saying don't apply it here because it over-punishes our client, right? And he says, listen, I hear you, but like, I've just made my ruling. So don't we have to read this so noted in light of what the judge has just explained his position to be? If the argument had stopped simply about the calculation of the guideline range and the court hadn't said anything more, I think that there is some teeth to the argument that all he was addressing there was the legal objection. But when, after that, the defense counsel goes on and argues, essentially, as you said, the variance argument, and the court says so noted, I think that that is a verbal indication by the court that it has heard and received that argument. And so noted. What was that Supreme Court case you were just citing? Rita. Rita. Yes, Rita says. No, I thought you said it was Chavez. That's another one. Chavez. Okay, it's that one. Chavez Mesa is the more recent case. That was issued in 2018. I'm not sure. Not in your brief. I'm not sure if my brief was filed before or after it was issued. And I can do a 28-J letter. But effectively. Seems like you should have already. Well, effectively, Chavez Mesa reinforces that the court meant what it said in Rita. In that particular case, in Chavez Mesa, when discussing Rita, what the court says, the record we said showed that the sentencing judge listened to each argument, considered supporting evidence, was fully aware of the physical ailments, and imposed a sentence at the bottom of the guideline range, having considered the 3553A factors, and said, having considered the 3553A factors, that that sentence was appropriate. And what's the date of that case? Is that the recent one? June 18th. Of what year? 2018. Okay, your brief was filed November of 2018. Well then, I apologize. Well, can you please do a 28-J letter? I absolutely will. So that counsel can fairly respond to that? Absolutely, and I can give your honor the citation if you want that now. Yes, please. Okay. It is 138, Supreme Court, 1959. So I think, though, that the important case is Rita, and I think in Chavez Mesa, the court is just saying, we meant what we said in Rita. Where it's a simple matter, and the court finds that the guidelines are appropriate, there's not much to say. And I'd like to take each of the defendant's arguments. In the reply brief on page four, the defendant says that there are four groups of arguments that weren't appropriately addressed. The first one is that the criminal history category overrepresented the seriousness of his criminal history. And we submit that, insofar as that relates to the variance, the court did address this idea of staleness through its other remarks. But also, I do think it's appropriate to actually look at the merit of the argument. This may be a meritorious argument for some defendants, but I would suggest that it is borderline frivolous for this defendant to say that his more recent history, his more recent conduct is a better representation, and is a more reliable basis on which to judge him. And I say that because his more recent conduct was evading drug charges from 2006 for a decade, and then being caught by the marshals with a gun. So are there any cases that have used the continuing offense theory in the way it was used in this case to enhance the criminal history? I believe that Dela Cruz is the one that says that, and because the court- That says what? That it explains the continuing offense theory, and I also think that- That's in the statute of limitations context. What she's asking is in the sentencing context. Has anyone taken the statute of limitations and done it in the sentencing context? Because, yes, in the statute of limitations context, that's the way it's used, typically, a continuing offense. Not in the sentencing context. Thank you, Judge Richardson. And I apologize, because I'm not as familiar with that line of cases, and I'm not as familiar specifically because the defendant's not contesting his guideline range. He has accepted that that was an appropriately calculated guideline range, so I'm sorry if I'm unable to respond to questions directed to that aspect of the court's concern. But the fact remains that he's not challenging that the guideline range was appropriately calculated, and I would suggest- But isn't that part of what makes it not a non-frivolous argument? That, I think at heart, his argument is that because of the continuing offense theory, he's being held accountable for very old convictions at the expense of the court focusing on his more recent conduct. And what I'm saying is, while that might be true for some defendants who have done wonderful things in their recent years, this is an individual who came back to the United States unlawfully in 2006, he was charged with two drug offenses, he possessed between 28 and 200 grams of cocaine, he failed to appear by the court, he had given an alias, he failed to appear, he lived here as a fugitive for 10 years. These are the things the district court should have said so that we wouldn't have to guess what the explanation was for the downward variance. You might be right about that, that he didn't deserve a downward variance. But the court has to explain that. The court has to show that it considered the arguments. And this court has to have fair assurance that the court exercised, had a reasoned basis for imposing the sentence it did. And on this record, where the argument is conceptually simple, my criminal history is overstated, I don't think on this record, particularly when you do have the judge, who he is familiar with the district courts, he is familiar with the defendant's history. He talks about, during the exchange with government counsel, when government is counsel arguing, he says, well yeah, and that's when the marshals found him with a gun, right? That's true. That's his most recent state charge. He's familiar with the federal, or with the state drug charges. And that's indicated through the exchange when the defense attorney says, well, when you combine the sentences on his state charges with his federal sentence that he's about to receive for illegal reentry, we think that's enough. And the court says, well, when is the last, when does that last sentence run? When does that expire? And then the court chooses to impose his federal sentence consecutive to this. The court also pointed out that he was 48 years old and had been deported twice. At that age, you would expect to have learned from your past mistakes. So, and I do, I appreciate that it would have been wonderful for the court to have laid this out more explicitly, but on this record, this is a weak argument, and I don't think there was much more that the court needed to say. He said that he, he effectively said that, where do you want me to go within the guidelines and why? Which is him saying, I think the guidelines have it right. And the guidelines are supposed to try to embody the 3553A characteristic, the considerations, for the typical offender. Effectively, the court didn't think that this defendant was atypical, that he was special, that he was so different in a way that he should have gotten a lesser sentence. And I think it's hard-pressed when you have cases like Rita, where saying, I agree with the guidelines, or the guidelines are appropriate, against arguments which were much better developed in Rita. Against an argument like that. And then I want to turn to the second argument that the defendant lists as a non-frivolous argument that should have been addressed. There's a sentence at the end of the, near the end of the departure motion, saying that disparities may arise in illegal reentry cases where the PSR cannot reliably pinpoint the date of reentry. They're not similarly situated. All a district judge can do is sentence a defendant based on the accurate and reliable information. I understand that argument. Can I ask you a different question, which is maybe a little beyond this particular one? With Judge Thacker's piece, you might go a little bit beyond. But could a district court, I mean, one of the challenges that we see here, right, is that there's a variance motion that raises one, maybe two grounds for a variance. And then sort of after those are rejected in the transcript, the defense counsel raises one or two others, maybe. Or at least sort of references this substantial savings argument. And I presume in that scenario,  it doesn't in any way waive it. And I don't think that's the argument that's made. But the question is, could a district court judge impose a requirement that all grounds for a variance be included in a variance motion so that they would avoid this problem down the road? So that a district court could at sentencing say, all right, I've got your variance motion. I can tick through and make sure that I've hit everything that you've raised. Because the district judge doesn't have the benefit of a transcript, right? It's easy for us to go back and say, all right, did you tick off every single thing that the defense counsel mentioned in passing, right? He's trying to remember, he or she's trying to remember all those things. Could the district court do that, require a written motion for a variance that identifies the grounds for a variance in order to allow him to comply with this requirement of individually addressing each ground for a variance? I think a district court could have a standing order with that. And I'd like to direct this court's attention that in this case, I think it's particularly inappropriate to argue that the district court failed to respond to some passing comments. Because at the end of the sentencing hearing, the court specifically turned to probation officer on page 46 and says, Madam probation officer, do you know of any required changes to further comply with the United States sentencing laws? No, your honor. Mr. Martin, defense counsel, does the defendant have any remaining legal objections to the sentence as stated by the court? No, your honor. Well, but that's the argument that we've rejected in blue and otherwise, that if you, where we've held that if you raise it once, the fact that you don't re-raise it at the end of sentencing doesn't matter. Well, I do think this could be distinguished because the court is expressly inviting the defense attorney and the defendant to say, listen, if I, you know, for example, if you have no idea why I imposed the sentence that I imposed, or if you feel like I didn't address sufficiently an argument, now's the time to do it. Let me correct this mistake that you're now complaining about. I understand that, but that's the, we've rejected that. I mean, I'm not disagreeing with you as a matter of first principles, but I think we've rejected that argument already. I'm not, I agree that you'll preserve the objection, but I'm not certain whether the court has addressed a situation where a judge specifically takes a moment to say, have I, have I done anything? Have I done everything that I can to comply with sentencing laws? And I at least think it's true. I mean, have you ever been to a sentencing where the judge at the very end doesn't say, all right, anybody got objections to what I've done? I mean, every, I've been in a few of these, like every single time the judge says, anybody got any problems? Right, anybody got any objections here? And the defense says no, and yet, you know, it gets on appeal, and under blue in those line of cases, we review it as if they, you know, fully preserved that objection. And I guess whether this is viewed in the context of, should the court have said more or anything else, these arguments were made in passing. I don't think that the court, this judge has been on the bench for a long time. Which arguments were made in passing? The argument about substantial savings to taxpayers. That was made in passing, and quite frankly, that's true of any defendant. If you spend less time in prison, you're gonna, it's gonna cost taxpayers less. And I see. It would cost taxpayers less as well if the sentencing was fully explained at sentence instead of having to come up here and appeal and go back, if that's what happens. If that is what happens, you are absolutely correct, you're correct, Your Honor. Thank you, and your time is up. We ask that you affirm the judgment. Thank you. Your Honor, it's just a couple of things. I would like. Can I ask you to start? Sorry, because otherwise I'm gonna forget it. On 39, this was the argument we were having with your colleague, on 38 and 39, the district court judge goes through his reasons for rejecting the objection on this sort of ground. And then the defense counsel, and sort of explains himself. And then the defense counsel goes back and says, but doing this, by taking that approach, this over-punishes our client and makes him responsible for ancient convictions, right? That sounds an awful lot like the variance argument that is made in the motion for a variance. And so, reasonably, I think we could read the transcript as saying, here's the legal objection, here's why it's rejected. Defense counsel says, right, okay, like, you know, I understand that ruling, but even so, it over-punishes our client and that makes him responsible for these ancient convictions, and that's the variance argument. And that's where the district court says, so noted, right? Sort of acknowledging, I've heard you, we could have given a better explanation, but just says, so noted. Do you read that as being a discussion about the variance argument? No, Your Honor, I do not. Tell me why not, I suspected you didn't. I think they're still very much discussing the guideline calculation and the legal objection at that point, too, and there's certainly the variance departure argument is absolutely related to that, it sort of springs from that, but I think at that point, the defense counsel is still trying to argue in favor of that legal objection. But so, help me understand, so when he says, taking that approach over-punishes our client, and that's not a legal objection, right? That's a, listen, this is too harsh, right? That sounds like a variance argument, not a legal objection argument. And so, but I think when you're trying to calculate the guideline, right, and trying to resolve a legal objection, it's very much applying, well, looking at the law and looking at the facts here, and looking at, or looking at the law and looking at the guideline and simply figuring out what the legal answer is, looking to case law. But then when you're talking about the variance or the departure, you're considering the individualized circumstances of that case. It very much requires the district court to focus in on this case. And the problem is, with just saying so noted, is that we don't. I understand that, but to go back to the previous point, I mean, I understand that maybe so noted's not enough, but what I, I'm just taking the defendant's, defense counsel's argument that this over-punishes, right, and makes him responsible for these, that's the variance argument. And then, so noted, maybe that's not a sufficient explanation, but that's response to the variance argument. I think it is some response. Right. I don't think it's. Maybe not sufficient, but it's a response. I don't think it's patently obvious, I would say. Your red light is on, but I have one question before you sit down. Are you able to respond to that recent Supreme Court case that she argued? That is what I wanted to explain, Your Honor. I think it's notable that the government made this exact Chavez-Mesa argument in United States versus Ross before this court. If you go and listen to the oral argument in that case, there was a long discussion about Chavez-Mesa, and ultimately, when this court issued its decision in Ross, it held to blue, it held to slappy. It did not change this court's analysis of either what the district court is obligated to, whether the district court is obligated to adequately explain the sentence and to respond to the non-frivolous arguments. So this court, I believe, has already considered the Chavez-Mesa argument in applying it to this line of case law, and has already determined that it's really not, really no need to distinguish it from that Supreme Court case. But I'm very happy to respond to the district,  Thank you. Thank you.
judges: Stephanie D. Thacker, Julius N. Richardson, Allison J. Rushing